IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THREE S DELAWARE, INC., AND SCOTT STEELE | * * * | |
| Plaintiffs, | * | |
| v. | * | Civil No. 1:09-CV-00051-JFM |
| | * | |
| AMERICAN ARBITRATION ASSOCIATION, et al. | * * * | |
| Defendants. | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**SUPPLEMENTAL MEMORANDUM REGARDING
PRECLUSION OF THE DEFAMATION CLAIM
<u>AGAINST DEFENDANT JAMES E. GRAY</u>**

Defendant James E. Gray ("Defendant" or "Gray"), through counsel, files this Supplemental Memorandum pursuant to the Court's Opinion and Order of September 23, 2009. As discussed below, remand of the defamation claim asserted by Plaintiffs Three S Delaware, Inc. and Scott Steele (collectively "Plaintiffs" or the "Steele Parties") against Defendant Gray is not appropriate because that claim is barred under principles of collateral estoppel by this Court's Final Judgment in *Three S Delaware, Inc. v. DataQuick Information Systems, Inc.*, Civil No. JFM-05-2017 (January 17, 2006 and August 25, 2006), as affirmed by the Fourth Circuit (the "*DataQuick* Case"). In light of this Court's familiarity with the proceedings in the *DataQuick* Case, Defendant Gray will not repeat the background of that litigation, but will simply refer to and incorporate the prior filings of the Defendants related to their Motion to Reopen Case and For Relief From Efforts by Three S Delaware, Inc. and Mr. Steele to Relitigate -- In State Court -- Claims and Issues Already Decided by This Federal Court.

In addition, Defendant refers to and incorporates the arguments previously made in opposing the remand of this action.[1] The Court has noted that removal of this action was proper because of Three S's pending bankruptcy. Given the strong federal interest involved in determining the collateral estoppel effect of a prior federal ruling, the Court should retain jurisdiction over this action to decide the preclusive of its own prior rulings. *See Carraher v. Morgan Electronics, Inc.*, 971 F.2d 327 (9th Cir. 1992). In *Carraher*, the Ninth Circuit ruled that a federal court's interest in deciding the collateral estoppel effect of a prior federal judgment weighed in favor a court retaining jurisdiction over a removed adversary proceeding. Just as in *Carraher*, this Court's interest in determining the collateral estoppel effect of its own prior judgment militates against a remand to state court. As demonstrated below, collateral estoppel bars the defamation claim against Defendant Gray, and therefore, this Court should retain jurisdiction so that it can decide the preclusive effects of its prior ruling.

## INTRODUCTION

The defamation claim against Defendant Gray in Count Seven of the Complaint arises out of an article published by the *Daily Record* on July 22, 2007 about the Fourth Circuit's affirmance of this Court's Final Judgment in the *DataQuick* Case in favor of Mr. Gray's client. The Steele Parties claim that a statement attributed by the *Daily Record* to Defendant Gray in that article is defamatory. As we show in this memorandum, the Steele Parties are now collaterally estopped from asserting the falsity of this statement. We note preliminarily that, in order to be defamatory, the alleged

---

[1] *See* Opposition to Motion for Abstention and Remand (Docket No. 276 in Civil No. JFM-05-2017). The Opposition was filed in JFM-05-2017 in response to the Motion for Abstention and Remand that the Steele Parties filed in that case. Subsequently, the Court ordered that the Steele Parties' Motion be re-docketed in this case (Docket No. 16).

statement attributed to Gray must have exposed the Steele Parties to public scorn, hatred, contempt, or ridicule.  The Steele Parties fail to allege any facts that support their claim of defamation.  They also fail to allege any facts that support their claim of $1 billion in damages allegedly caused by the statement attributed to Gray.  In short, the Steele Parties fail to state a meritorious claim upon which relief can be granted and their claim should be dismissed.

More importantly for this Court, though, is that even if the Steele Parties were able to plead facts supporting the elements of damages and causation, the defamation claim is barred by collateral estoppel because the truth of the allegedly defamatory statement has already been litigated and decided against the Steele Parties.  The factual issue underlying Defendant Gray's alleged statement was litigated and determined to be true by Arbitrator Constable and subsequently accepted by this Court, and the Fourth Circuit, all as more fully set forth in the filings in the *DataQuick* Case.  The Steele Parties can no longer challenge the truth of the statement; they are bound by the prior factual determinations by Arbitrator Constable that the content of the statement is true.  Indeed, those factual determinations, that Three S's "constructive sales" to First Union, for which Three S received an award of over $37 million in the *First Union* Case, "would have used DataQuick data" and that Three S's "only source of data to sell to third parties was DataQuick," were the foundation for Arbitrator Constable's unjust enrichment award in favor of DataQuick.  *See* Revised Award in *Steele Software Systems Corp. v. DataQuick Information Systems, Inc.*, American Arbitration Association Case No. 16 181 00696 04, at page 11, a copy of which is attached hereto as Exhibit 1.

## ARGUMENT

**A.      The Alleged Defamatory Statement**

In the Complaint, the Steele Parties allege that a statement attributed to Defendant Gray in an article in the *Daily Record* on July 22, 2007 is false and defamatory. Complaint ¶¶ 121 to 125. But Defendant Gray's alleged statement only encapsulated a central finding of the Fourth Circuit's opinion: the fact that Arbitrator Constable determined that the projected transactions used as the basis for the *First Union* judgment would have used data received from DataQuick. Specifically, Arbitrator Constable, referring to the award recovered by Steele in the *First Union* Case, made four critical factual findings:

> [1]     Steele was thus paid for sales that it did not consummate. The Arbitrator finds that **these "constructive sales" would have used DataQuick data.**
>
> [2]     The record, with the entitlement to draw negative inferences, convinces the Arbitrator that **Steele's only source for data to sell to third parties was DataQuick** . . . .
>
> [3]     The record, with the entitlement to draw negative inferences, convinces the Arbitrator that . . . **Steele understated its cost accruals for that data in the financial reports used by Steele to support a claim for lost profits on the First Union Contract**.
>
> [4]     Steele has been **paid for a product for which DataQuick would have been entitled to a transactional fee**.

Revised Award, p. 11 (bold emphasis added). These findings led Arbitrator Constable to conclude that "DataQuick is entitled to compensation for those transactions under the theory of unjust enrichment," and he, therefore, awarded DataQuick ten percent (10%) of the total amount awarded to Steele in the *First Union* Case. *Id*.

The *Daily Record* article, which was entitled "Steele's Big Win Was Evidence of Subcontractor's Loss," reported on the Fourth Circuit's affirmance in the *DataQuick* Case of this Court's prior rulings confirming the Arbitration Award against the Steele Parties. *See* Copy of article attached as Exhibit 2. In the context of explaining the damages awarded to DataQuick by Arbitrator Constable, the article included the alleged defamatory statement by Defendant Gray. The statement, as reported in the article, mirrors Arbitrator Constable's factual findings:

> 'What [Steele] advanced in the First Union Case,' Gray said, was based on 'being able to perform these transactions with DataQuick.'

In affirming this Court's Final Judgment, the Fourth Circuit expressly relied upon these factual findings by Arbitrator Constable. *See Three S Delaware, Inc. v. DataQuick Information Systems, Inc.*, 492 F.3d 520, 526, 528 (4th Cir. 2007). Indeed, only three paragraphs after Gray's alleged statement, the *Daily Record* article contained a quote from the Fourth Circuit opinion in which Judge King observed the identical fact as Gray:

> **Given that 3S claimed ownership of DataQuick's data during the First Union litigation**, the related unjust enrichment damages were justifiably drawn from the provision of the agreement that prohibits 3S's commercial exploitation of DataQuick's data.

(quoting *Three S Delaware* at 528.) (bold emphasis added).

How can the Steele Parties claim that repeating an arbitration finding as affirmed by the courts is defamation? The answer is a stubborn and continuing unwillingness to accept the outcome of the DataQuick arbitration proceeding. As discussed in prior filings, the defamation claim is just another way for the Steele Parties to challenge the Arbitration Award as enforced by this Court and affirmed by the Fourth Circuit in the

*DataQuick* Case. Collateral estoppel prevents the Steele Parties from relitigating the central fact that underpins their defamation claim.

**B.     The Elements of a Defamation Claim:**

To present a prima facie claim that the alleged statement by Defendant Gray was defamatory under Maryland law, the Steele Parties must plead and prove the following four elements:

  1. that Defendant Gray made a defamatory statement to a third person;
  2. that the statement was false;
  3. that Defendant Gray was legally at fault in making the statement; and
  4. that the Steele Parties thereby suffered harm.

*Smith v. Danielczyk*, 400 Md. 98, 115, 928 A.2d 795, 805 (2007). For a statement to be defamatory, it must tend to expose a person to public scorn, hatred, contempt, or ridicule, and thereby discourage others in the community from having a good opinion of them. *Chesapeake Publishing Corp. v. Williams*, 339 Md. 285, 295, 661 A.2d 1169, 1174 (1995).

The Steele Parties' sparse allegations do not constitute a prima facie claim of defamation. The allegations contain no facts elaborating how the purported statement could plausibly be considered defamatory. The alleged defamatory statement simply restated a finding contained in a judicial opinion and in an arbitration award.[2] The statement is no more likely to expose the Steele Parties to scorn, hatred, contempt, or ridicule than the judicial opinion and the arbitration award upon which it is based. Moreover, there are no facts showing that this statement caused the Steele Parties any

---

[2]     Under Maryland law, a fair and substantially accurate report of judicial proceedings is privileged from defamation claims. *Chesapeake Publishing Corp. v. Williams*, 339 Md. 285, 296-97, 661 A.2d 1169, 1174-75 (1995).

harm. The Steele Parties generally allege that they suffered "injury to their reputation," but make no attempt to allege how Gray's statement regarding the Fourth Circuit opinion caused them such damages.

Notwithstanding these deficiencies and for the purposes of this memorandum, Defendant will focus on the second necessary element of a defamation claim: falsity. A false statement is "one that is not substantially correct." *Id.* at 295, 661 A.2d at 1174. Even minor inaccuracies do not amount to falsity so long as the gist of the statement is true. *Id.*

To successfully plead a claim for defamation, the Steele Parties must prove the following factual finding of Arbitrator Constable is false (i.e. not substantially correct):

> *The monetary judgment obtained in the First Union Case was based on projected transactions that would have used DataQuick data.*

We cite to this finding by Arbitrator Constable because Gray's alleged statement tracks that finding. In other words, the Steele Parties cannot show that Gray's statement is false without directly attacking the findings of Arbitrator Constable, this Court, and the Fourth Circuit. Principles of collateral estoppel prevent such attacks and attempts to relitigate identical facts that have already been determined.

C.  **The Fact Underlying Gray's Statement Has Been Litigated and Decided**

Arbitrator Constable found, with this Court confirming his findings and the Fourth Circuit affirming, that the monetary judgment received by the Steele Parties in the *First Union* Case was based on projected transactions that would have used DataQuick data. This fact was central to the finding by Arbitrator Constable in the DataQuick arbitration that the Steele Parties were unjustly enriched by the *First Union* judgment.

1.  **Arbitration Award:**

In the Revised Award, Arbitrator Constable awarded DataQuick damages of over $6 million based on four critical findings that were quoted in detail above, which can be summarized briefly as follows: 1) "constructive sales" by the Steele Parties with First Union would have used DataQuick data; 2) the Steele Parties' only source for data to sell to third parties was DataQuick; 3) the Steele Parties understated their costs for DataQuick data in the *First Union* Case; and 4) the Steele Parties were paid for a product for which DataQuick would have received a fee.[3]

The express factual findings by Arbitrator Constable, which are set forth above, *supra* p. 4, established the basis for awarding DataQuick damages for unjust enrichment. Without having found that DataQuick data would have been used in the projected transactions with First Union, Arbitrator Constable could not have found that the Steele Parties were unjustly enriched or have calculated damages as he did.

### 2.     This Court's Confirmation of the Arbitration Award:

By its January 17, 2006 Order in the *DataQuick* Case, this Court confirmed in its entirety Arbitrator Constable's Revised Award (with the exception of attorney's fees). In its December 21, 2005 oral opinion, this Court noted that:

> . . . Mr. Constable was perfectly, there was full basis for a finding that DataQuick data had been used in the transactions upon which SSS, Mr. Steele recovered a huge verdict in Baltimore City.
>
> \*   \*   \*
>
> And there was a basis for finding the DataQuick data was used in the transactions, which were the basis of the transactions.

---

[3]     Also, Arbitrator Constable was critical of the Steele Parties' behavior both with respect to their business dealings with DataQuick (noting that the Steele Parties "deliberately misled DataQuick" and "deliberately concealed" facts from DataQuick) and with respect to their behavior during the Arbitration (noting that the Steele Parties "neglected to mention [their] contract with First Union Bank"). *See* Revised Award, p. 9.

Transcript of December 21, 2005 proceedings in Civil No. JFM-05-2017, pp. 67-68.

During the *DataQuick* Case, the Steele Parties had a full and fair opportunity to litigate this factual issue. For example, in their Memorandum in Support of Motion to Vacate Arbitration Award, the Steele Parties argued that the Arbitration Award was irrational because the *First Union* judgment was not based on consummated or actual sales to First Union, and therefore, the *First Union* judgment could not have been based upon the use of DataQuick's data.[4]

Despite these arguments, this Court confirmed Arbitrator Constable's findings that the Steele Parties had been paid in the *First Union* Case for "constructive sales" for which DataQuick would have received a fee. This Court also confirmed Arbitrator Constable's finding that DataQuick data would have been used in transactions with First Union and confirmed Arbitrator Constable's finding of a negative inference that DataQuick was the Steele Parties' only source for data to sell to third parties. This Court even noted that the Steele Parties were morally and legally estopped from arguing that DataQuick data would not have been used in transactions with First Union, and that if Mr. Steele wanted to take such a position, "then sanctionable conduct did occur and it ought to occur in Baltimore City, because false projections were made in a city case." Transcript of December 21, 2005 proceedings, p. 68. That same estoppel applies to the defamation claim against Defendant Gray.

### 3.     Fourth Circuit's Affirmance of Award of District Court Ruling

---

[4] *See e.g.* Memorandum in Support of Motion to Vacate Arbitration Award (Docket No. 19-2 of Civil No. JFM-05-2017), Section B entitled "The Award Is Irrational and Must Be Vacated," pp. 31-39.

The Fourth Circuit subsequently affirmed this Court's ruling in the *DataQuick* Case and upheld the Arbitration Award. In its opinion, the Fourth Circuit relied on and accepted the Arbitrator's findings that DataQuick data would have been used in the projected transactions that were the basis of the Steele Parties award in the *First Union* Case. The Fourth Circuit wrote the following:

> Although 3S received its award of damages in [the *First Union*] case on the basis of projected transactions with First Union, the arbitrator found that those transactions would have used DataQuick's database.

*Three S Delaware, Inc. v. DataQuick Information Systems, Inc.*, 492 F.3d 520, 526 (4th Cir. 2007). The Fourth Circuit also wrote:

> As found by the arbitrator, without DataQuick's data, 3S would not have been able to offer its services to First Union and thus would not have prevailed against First Union on its breach of contract claim. Given that 3S claimed ownership of DataQuick's data during the *First Union* litigation, the related unjust enrichment damages were justifiably drawn from the provision of the Agreement that prohibits 3S's commercial exploitation of DataQuick's data.

*Id*. at 528.

In their briefing on the appeal, the Steele Parties repeatedly, and without success, argued that Arbitrator Constable's findings regarding the *First Union* judgment was wrong. For example, the Steele Parties unsuccessfully made the following arguments against the findings of Arbitrator Constable:

> [T]he Arbitrator failed to follow applicable law and awarded "unjust enrichment" damages to DataQuick for hypothetical use of the DQ Database in transactions that did not occur at all, based upon his own personal notions of right and wrong.

Brief of Appellant (Docket No. 241-6 of Civil No. JFM-05-2017), p.17-18;

> Because the Arbitrator misconceived how 3S used the DQ Database, he decided to draw negative inferences based upon the alleged conduct of 3S prior to the Arbitration Hearing and concluded, in conjunction with the

> necessarily false testimony presented by DataQuick [footnote omitted], that 3S used the DQ Database in all its transactions.

Supplemental Brief of Appellant (Docket No. 241-4 of Civil No. JFM-05-2017), p. 6.

> As the award demonstrates, the arbitrator rejected DataQuick's newly fabricated post-hearing argument and instead manufactured damages based upon his own personal notion of justice by turning to the First Union Judgment, and sales that never took place between January 1998 and April 20, 2001, to fashion his own irrational unjust enrichment award.

Reply Brief of Appellant (Docket No. 241-5 of Civil No. JFM-05-2017), p. 5.

**D.   Collateral Estoppel Bars Relitigation of the Fact Underlying Gray's Statement.**

Arbitrator Constable determined as a matter of fact that DataQuick data would have been used by the Steele Parties in the projected transactions that were the basis for the judgment received by the Steele Parties in the *First Union* Case. The finding was confirmed by this Court and affirmed by the Fourth Circuit. The Steele Parties were afforded a full and fair opportunity to litigate this fact otherwise. But this Court and the Fourth Circuit were not persuaded by the Steele Parties' arguments and ruled against them. Arbitrator Constable's finding was central to DataQuick's success in recovering damages for unjust enrichment from the Steele Parties.

A defamation claim based on Defendant Gray's alleged statement is barred by collateral estoppel because the truth of the identical factual issue has been actually determined and necessarily decided in prior litigation where the Steele Parties had a full and fair opportunity to litigate the issue. *Ramsay v. U.S. Immigration & Naturalization Serv.*, 14 F.3d 206, 210 (4th Cir. 1994).[5] Collateral estoppel is based on the policy that

---

[5]   The elements of collateral estoppel are: 1) the issue precluded must be identical to the one previously litigated; 2) the issue must have been actually determined in the prior proceeding; 3) determination of the issue must have been a critical and necessary part of the decision in the

the losing litigant deserves no rematch after a defeat fairly suffered on issues raised in adversarial proceedings. *Colandrea v. Wilde Lake Community Assoc.*, 361 Md. 371, 391, 761 A.2d 899, 909 (2000). The Steele Parties have been fairly defeated more than once on this factual issue and do not deserve a rematch through the guise of a defamation claim.

E.   **Demonstrative Cases:**

In similar circumstances, federal courts have ruled that collateral estoppel bars defamation claims where the allegedly false statement was determined to be true in a prior court proceeding. In *Wehling v. Columbia Broadcasting System*, 721 F.2d 506, 507 (5th Cir. 1983), the Fifth Circuit affirmed a district court summary judgment ruling that dismissed a defamation claim based on a defense of truth established by collateral estoppel. In *Wehling*, the plaintiff sued CBS for an allegedly defamatory evening new report. *Id.* The court found that factual findings in a prior federal criminal case and a prior state civil case conclusively established that the substance of CBS's report was true, and therefore not defamatory. *Id.* at 508-09.

In *Stafford v. True Temper Sports*, 123 F.3d 291 (5th Cir. 1997), the Fifth Circuit again ruled in a similar fashion. In *Stafford*, a factory employee had been for fired dishonesty and for manipulating equipment monitoring his performance. *Id.* at 293. A review board denied the employee unemployment benefits because of his dishonesty. *Id.* The board's decision was affirmed by a state court. *Id.* The employee later filed suit in federal court against his employer and alleged, among other things, that the dishonesty

---

prior proceeding; 4) the prior judgment must be final and valid; and 5) the party against who estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum. *Ramsay*, 14 F. 3d at 210.

allegations by the employer were defamatory and a pretext for his firing. *Id.* at 293-94. After a *de novo* review, the Fifth Circuit ruled that the defamation claim was preempted by federal labor law, but also ruled that the defamation claim would have been barred by collateral estoppel as well. *Id.* at 296-97. The court noted that falsity is an essential element of defamation and because the alleged defamatory statement was proven true in the prior state proceedings, relitigation of this fact was precluded. *Id.*

In another case, *Sullivan v. American Airlines, Inc.*, 613 F. Supp. 226 (S.D.N.Y. 1985), the Southern District of New York granted summary judgment of a defamation claim on collateral estoppel grounds. In *Sullivan*, an employee had been fired for attempting to steal company property. *Id.* at 229. The employee pursued formal grievance procedures and submitted his case for arbitration. *Id.* After a two-day arbitration proceeding in which testimony was given and legal briefs were submitted, an arbitration panel concluded that the employee had intended to steal the property. *Id.* Just prior to the arbitration ruling, the employee filed a defamation claim against American Airlines in state court for falsely accusing him of dishonesty, theft, and pilferage. *Id.* at 229-230. The case was removed and the federal district court found that the panel of arbitrators had determined that the employee had in fact attempted to steal the property. *Id.* at 230. The court found that this fact was the same issue that was the subject of the defamation claim. *Id.* The court found that the employee had had a full and fair opportunity to litigate the issue in the arbitration proceeding and that the arbitration panel's factual findings precluded further relitigation in the defamation claim. *Id.* at 231-32.

## **CONCLUSION**

In short, if a plaintiff tries to use a defamation claim to relitigate the truth of a fact that has already been determined in a prior proceeding, collateral estoppel will bar relitigation of the fact and the claim will fail.  The litigant cannot prove the falsity of a fact that was already litigated and determined to be true in prior litigation.  Here, Arbitrator Constable determined that the Steele Parties obtained a judgment based on projected transactions that would have used DataQuick data.  Arbitrator Constable's finding was confirmed by this Court, which was affirmed by the Fourth Circuit.  In light of these determinations, the Steele Parties are barred from claiming that an alleged statement by Defendant Gray that simply repeats this factual determination is false.  The determination has already been litigated and found to be true.  Collateral estoppel bars further relitigation by the Steele Parties.

Dated October 9, 2009

                                              Respectfully submitted,

                                              / s /

G. Stewart Webb, Jr. (# 00838)
gswebb@venable.com
Roscoe R. Leslie (# 28315)
rrleslie@venable.com
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7400 (tel.)
(410) 244-7742 (fax)

Attorneys for James E. Gray

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of October, 2009, a copy of the Supplemental Memorandum Regarding Preclusion of the Defamation Claim Against Defendant James E. Gray was served by regular mail on:

>Scott Steele
>5700 Executive Drive
>Baltimore, Maryland 21228;

and by ECF to counsel of record:

>Matthew B. Ruble
>matt@mbrlaw.com
>131 W. Patrick St.
>Frederick, MD 21701-5683
>(301) 698-5000 (tel.)
>(301) 698-1202 (fax)
>
>*Attorney for American Arbitration Association*
>  *and James W. Constable*

/ s /

Roscoe R. Leslie